IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LEWIS ATCHISON,             )
                                   )
    Plaintiff              )
                                   )   CIVIL ACTION FILE
v.                            )
                                 )   NO.  1:13-cv-02922-TCB
THE BOARD OF REGENTS FOR )
THE UNIVERSITY SYSTEM OF )
GEORGIA, JAMES BURNS     )
NEWSOME, GARY WOLOVICK, )
WILLIAM D. SCHAFER, JOHN  )
M. STEIN, JACQUELINE       )
DENISE JOHNSON-MARSHALL, )
and GEORGE PAUL PETERSON, )
                                 )
    Defendants.       )

## EXPERT OPINION FOR THE PLAINTIFF

I have reached several opinions in the matter of *Lewis Atchison v. The Board of Regents of the University System of Georgia, et al*.  The following is a statement of my opinions, and the basis and reasons, facts or data that I have used for their foundation.

1

## **BACKGROUND**

To form my opinions I have relied upon documents, identified in Exhibit 1, provided by the Voyles Millhollin Law Firm about Mr. Atchison's experiences with the Georgia Institute of Technology (Georgia Tech, the Institute) and the Board of Regents of the University System of Georgia. I also have read the court documents made available to me by the Firm. I have thought about all of these documents in the context of my knowledge of higher education and other universities.

Mr. Atchison did not leave the Georgia Institute of Technology voluntarily, and he seeks reinstatement/readmission. He was expelled in 2006. This means that he was not permitted to complete his undergraduate degree and that he was forced to leave Georgia Tech. Many years have passed since 2006; during these intervening years Mr. Atchison has persistently appealed his expulsion so that he could complete his undergraduate requirements and graduate with a degree from Georgia Tech. Thus far his appeals have failed. I have contemplated seriously why and how this happened to Mr. Atchison and, in order to evaluate Mr. Atchison's case, I have found it necessary to report the timeline in which Mr.

Atchison's difficulties unfolded and to state my opinions within that context.

According to a memorandum, written on April 1, 2005, to Mr. Atchison from Karen D. Boyd, Georgia Tech's Senior Associate Dean of Students, the Undergraduate Judiciary Cabinet (UJC) found Mr. Atchison, at a hearing held on March 15, 2005, responsible for two non-academic violations of the Georgia Tech Student Conduct Code as published in the Student Handbook.  The UJC recommended to Dean Boyd that Mr. Atchison be expelled; however, while Dean Boyd accepted the recommendation concerning Mr. Atchison's responsibility, she amended the sanctions. Among lesser sanctions, Dean Boyd suspended Mr. Atchison from Georgia Tech for a minimum of two terms.

Mr. Atchison appealed this decision through his attorney Alan C. Manheim in a timely manner and in writing, in a letter dated April 5, 2005, to Vice President for Student Affairs William Schafer.  According to a letter, dated May 2, 2005, from Alfred D. Andrew, Chair of the Student Grievance and Appeal Committee (SGAC), to Vice President Schafer, the SGAC met on April 26, 2005, to consider Mr. Atchison's appeal.  The SGAC found no basis for the appeal, but agreed with Dean Boyd's suggested sanctions.

In a letter to Mr. Atchison, dated May 6, 2005, Vice President Schafer concurred with the SGAC and denied Mr. Atchison's appeal, and placed into effect the decision and sanctions recommended by Dean Boyd. From the Notification of Suspension sent to Mr. Atchison, it appears that his suspension was made retroactive to February 10, 2005, and to end on August 21, 2005.

I find nothing unusual in Georgia Tech's intertwining students and administrators to come to these decisions, but final decisions concerning a student's standing are the responsibility of the administration of the institution.  Also it is not uncommon for a university to make retroactive an administrative decision concerning a student although I do not know how the February date was chosen.  In any event the retroactivity of Mr. Atchison's suspension would allow him to continue his education in the fall/winter term 2005.

In a letter, dated May 16, 2005, to Elizabeth E. Neeley, Associate Vice Chancellor for Legal Affairs, Mr. Atchison applied through his attorney Alan C. Manheim to the Board of Regents of the University System of Georgia for review of the decision by the Vice President for Student

Affairs. Mr. Atchison alleged that the Georgia Tech Guide for Students Involved in a Hearing caused serious procedural problems because of its muddled standards about the admission of hearsay. He contended that both hearsay and double hearsay were allowed into evidence and formed the basis for the decision.

Georgia Tech is responsible for its rules and regulations concerning student discipline, and the Institute charged its Dean of Students to administer these rules and regulations. The confused rules in the Guide concerning the admission of evidence in a hearing were impossible to follow, so the members of the Undergraduate Judiciary Cabinet must have heard a jumble of evidence. Working with contradictory rules of evidence, how did the UJC know what evidence to admit or how to weigh or disregard the evidence it received? It could not know because it had no consistent rules to follow. This made the proceeding inherently unfair to Mr. Atchison, and in my opinion should have rendered the UJC's decision unenforceable.

The Board of Regents of the University System of Georgia denied a review of Mr. Atchison's case in a letter dated June 8, 2005. As a result, Mr. Atchison's suspension began and his scholarships were revoked.

It is a common condition of a scholarship that a student be enrolled and maintain a certain academic standing.

Having exhausted all his remedies within the University system, Mr. Atchison petitioned and filed a complaint against the Board of Regents and Georgia Tech's President Clough in the Superior Court of Fulton County, State of Georgia, on June 30, 2005. On November 18, 2005, the Superior Court ordered that Mr. Atchison "be allowed to register and enroll for classes" in winter semester 2006, and that he "be afforded all the rights and privileges" of students at Georgia Tech.

Although Mr. Atchison was initially barred by Georgia Tech from registering for classes for the winter/spring term 2006, he appears to have been a student at Georgia Tech during the winter/spring and fall terms of 2006, and it is during these terms that Mr. Atchison's disciplinary problems escalated.

Georgia Tech acknowledged that Mr. Atchison has learning disabilities. As required by the American with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, the Institute provided him with academic accommodations.

6

If Mr. Atchison had attended any other university, under the law it would have had to do the same for Mr. Atchison, so Georgia Tech was not unique in this circumstance.

In order to meet its federally mandated responsibilities to students with disabilities, Georgia Tech employed a Director of Disability Services who also served as an Assistant Dean of Students, and maintained an office called the Access Disabled Assistance Program for Tech Students (ADAPTS). This office existed within the Division of Student Affairs and had as one of its responsibilities the provision of services that complemented Mr. Atchison's needs. According to an official ADAPTS document, dated January 30, 2006, Mr. Atchison was to be provided with a course lecture outline, use of a note-taker or lab assistant, a quiet and non-distracting test environment, and double time on exams and quizzes. In another official ADAPTS document, dated September 15, 2006, Mr. Atchison was provided with the accommodations just cited with the exception of a course lecture outline.

In my experience these accommodations are usual, and I imagine that Mr. Atchison received an official ADAPTS document outlining his

accommodations each term that he was enrolled.

Georgia Tech assigned Mr. Atchison to the ADAPTS office to take his tests and quizzes, and assigned ADAPTS staff members to proctor him.

Proctors are people appointed to ensure that students are following the general and specific rules during tests. A general rule would be a prohibition against cheating, and a specific rule would be whether a student can bring notes to a test, and if so what form they should take in terms of length and content.

Mr. Atchison complained repeatedly that the ADAPTS staff did not maintain the quiet and non-distracting test environment to which he was entitled. He sent a number of emails to administrators stating this serious problem. In an email, written on July 9, 2006, to Stephanie Ray, Associate Dean of Students, Mr. Atchison said that "semester after semester" he had been distracted during tests by "continuous talking and loud laughing" by the proctors, and that every time he raised this issue with the director and supervisor of the ADAPTS program they told him they could not provide a silent environment in which to take his tests. In an email written to Dean Ray and others, on August 2, 2006, Mr. Atchison said that he had to ask at

least three times during a final exam that the testing center staff stop talking constantly, and that he was shouted at when he complained. In an email, written on September 24, 2006, Mr. Atchison wrote that the testing conditions had improved, but asked that someone be asked not to play music in the computer room while he was being tested.

I find it reprehensible and indefensible that ADAPTS did not provide Mr. Atchison with a quiet testing environment which the office itself had mandated as one of its accommodations.  Ms. J. Denise Johnson-Marshall, Assistant Dean of Students and Director of Disability Services, was responsible for overseeing ADAPTS for Georgia Tech, and I believe that she and members of the ADAPTS staff were dismissive of their duties with regard to correcting the noisy and disturbing environment in the ADAPTS testing center.

August Giebelhaus, Chair of the Student Honor Committee and Professor in Georgia Tech's School of History, Technology, and Society, wrote a memorandum, on September 13, 2006, to Ericka McGarity, Assistant Dean of Students and Director of Student Integrity.  He stated that the Student Honor Committee had held a hearing, on September 11, 2006,

about accusations made against Mr. Atchison for violating a section of the Student Code of Conduct.  Mr. Atchison specifically 'was accused of using unauthorized "cheat sheets"' in the ADAPTS office on two occasions, one while taking Quiz #3 on April 19, 2006, and the other while taking the final exam on May 4, 2006, both in Industrial and Systems Engineering 3232. The Committee found Mr. Atchison responsible for the charges.  In considering its sanctions, the Committee took into account four previous occasions (September 1999, January 2000, December 2003, and May 2005) in which Mr. Atchison had been found responsible for violations of the Student Code of Conduct.  In addition to reductions in his grades for the quiz and the exam the Committee unanimously decided "that Mr. Atchison's cumulative actions should result in his immediate expulsion from the Institute."

The timing of the events surrounding these charges is troublesome so I want to iterate the dates involved.  Mr. Atchison took Quiz #3 on April 19, 2006, and he took the final exam on May 4, 2006.  The charges arising from these dates were not brought until the fall.  The hearing on the charges arising from these dates occurred on September 11, 2006, and resulted in a recommendation of immediate expulsion.

Because many members of any faculty and students are absent from campus during summer, I do not find it unusual that a hearing would be convened early in the following fall term. However, I find it highly unusual and disturbing that Mr. Atchison was charged months after the alleged cheating occurred. Fairness dictates that he should have been charged during the spring term immediately following April 19 and May 4. Because he was charged in the fall, I draw a causal relationship between Mr. Atchison's emails, written on July 9, 2006, and on August 2, 2006, complaining about the noisy conditions in the ADAPTS testing center during his tests and the charges pressed against him in September. It was only after Mr. Atchison wrote these emails to Dean Ray that "(a)ccording to Professor Esogbue's testimony, Ms. Johnson-Marshal [sic] advised and insisted that Professor Esogbue institute academic dishonesty proceedings against Mr. Atchison despite Professor Esogbue's desire not to do so." (Quotation taken from attorney Bowers letter dated March 23, 2009.)

I believe that the only conclusion to draw is that Ms. Johnson-Marshall retaliated against Mr. Atchison for his emails to the Dean of Students office concerning the lack of provision in the ADAPTS center of a

11

quiet testing environment to which he was entitled as an accommodation for his learning disability. I further believe that this act of retaliation was a violation of federal law, and should not have been used to expel Mr. Atchison from Georgia Tech.

Dean McGarity wrote a memorandum to Mr. Atchison on September 19, 2006, informing him that he had been found responsible for violating the Student Code of Conduct and that his sanctions, including immediate expulsion, were based on his entire disciplinary history. She wrote that Mr. Atchison could appeal this action to Vice President William Schafer.

Mr. Atchison timely appealed this decision to Vice President Schafer through his attorney Alan C. Manheim on September 25, 2006. His appeal stated that the Student Honor Committee should not have taken into account the May 2005 action against him because it "is the subject matter of an action pending in the Superior Court of Fulton County", and "(a)s such, the finding against Mr. Atchison and the Enforcement of same is not in force and effect and should not have been used against him in determining appropriate sanctions in this current matter...Regardless, it was clear error for the Honor Committee to consider this matter in aggravation of, or in any

way related to sanctions in the current matter."

Professor Giebelhaus wrote to the Student Grievance and Appeals Committee and to Vice President Schafer on September 27, 2006, and said "We made our decision based on the information provided to us; the Committee had no special knowledge of either previous court orders or action pending in the Superior Court."

I agree with Mr. Manheim's assessment, and I believe that Georgia Tech's administration should have advised the Student Honor Committee to disregard the May 2005 action against Mr. Atchison. While it is usual to take into account a student's cumulative disciplinary history when deciding a sanction, it is clear that in Mr. Atchison's case this was error that may have led to his expulsion.

Richard W. Neu, Chair of the Student Grievance and Appeals Committee, wrote Vice President Schafer, on October 13, 2006, to inform him that the SGAC met, on October 9, to consider Mr. Atchison's appeal. Mr. Neu said 'Considering the "disciplinary history" of Mr. Atchison, the sanction rendered by the Student Honor Committee is reasonable.' He concluded by recommending to Vice President Schafer that he deny Mr.

Atchison's appeal.

So again the May 2005 action was inappropriately and detrimentally used against Mr. Atchison.

Vice President Schafer wrote Mr. Atchison on October 23, 2006, saying that the SGAC recommended that Mr. Atchison's appeal be denied. He said that he "decided to concur with the SGAC and deny your appeal. The decision and sanctions, along with the supporting rationale including your previous disciplinary history, imposed by the Honor Committee are hereby upheld and in effect." In addition to sanctions regarding his grades on Quiz #3 and his final exam, he was immediately expelled from Georgia Tech.

I believe that there was a fatal flaw in Georgia Tech's disciplinary process that created a downwardly spiraling series of decisions in Mr. Atchison's case. The published Guide for Students Involved in a Hearing contained and permitted contradictory standards of evidence. The Guide stated that "each witness may offer testimony of which he or she has direct knowledge. This means that only statements containing first hand experience would be allowed." Later the Guide states "…hearsay testimony

14

is admissible.  However, double hearsay testimony is not permitted."  These confused standards were fundamentally unfair to all of the students involved in a hearing of the Undergraduate Judiciary Cabinet; the accused because testimony given against him may have been unreliable, the witnesses because their testimony should likely have been discounted, and the members of the Cabinet because they were functioning with contradictory standards and therefore could not render a correct opinion. Fundamental fairness and equitable treatment requires that a University's policies and procedures be followed; however, when the policies and procedures are contradictory and confused, it becomes impossible to follow them responsibly and, therefore, to make sound decisions.

The Institute's appeals processes were flawed because they did not discern the faulty evidentiary foundation on which the UJC's original decision was built.   In addition because it was "the subject matter of an action pending in the Superior Court of Fulton County", the Student Honor Committee should have been informed to disregard the May 2005 action against Mr. Atchison in coming to its decision.

On November 2, 2006, the Superior Court of Fulton County dismissed

15

Mr. Atchison's case "as Georgia law is well-established that disputes concerning academic decisions of a public educational institution are non-justiciable controversies."  On January 26, 2007, the Court of Appeals of the State of Georgia dismissed Mr. Atchison's appeal of the Superior Court decision because he had "failed to follow the proper appellate procedure…"

Immediately following his expulsion from Georgia Tech by Vice President Schafer on October 23, 2006, Mr. Atchison made an appeal to the Board of Regents on November 10, 2006.  However, at the Board's meeting, held on January 16-17, 2007, it declined to grant Mr. Atchison's application for review.

The matter was revived again more than two years later when on March 23, 2009, Michael J. Bowers, an attorney representing Mr. Atchison, wrote to Erroll B. Davis, Jr., Chancellor of the Board of Regents of the University System of Georgia, "to request that the Board of Regents either reverse Georgia Tech's decision to expel Mr. Atchison or, at the least, grant Mr. Atchison a hearing to review the expulsion decision and consider new arguments on Mr. Atchison's behalf."  Mr. Bowers said that Mr. Atchison required "only five classes to complete his course work…"  Among other

assertions Mr. Bowers said that "(i)n his emails to Dean Ray, Mr. Atchison informs her of Ms. Hunter and Ms. Johnson-Marshall's refusal to control their proctors. Ms. Hunter and Ms. Johnson-Marshall subsequently took affirmative steps to retaliate against Mr. Atchison. According to Professor Esogbue's testimony, Ms. Johnson-Marshal (sic) advised and insisted that Professor Esogbue institute academic dishonesty proceedings against Mr. Atchison despite Professor Esogbue's desire not to do so…The proceedings were initiated immediately following Mr. Atchison's emails criticizing the A.D.A.P.T.S staff." Mr. Bowers stated that "Georgia Tech's expulsion of Mr. Atchison and its subsequent refusal to allow him to complete his degree constitutes retaliation under the Americans With Disabilities Act" and "the Rehabilitation Act…"

I have not seen any response to Mr. Bowers' letter from the Chancellor of the Board of Regents.

## JANUARY 26, 2010 APPEAL

Mr. Atchison wrote a letter of appeal, dated January 26, 2010, to Vice Chancellor for Legal Affairs J. Burns Newsome, stating that he had new evidence about the circumstances leading to his expulsion and requesting a

17

rehearing before the Board of Regents' Committee on Organization and Law. His appeal stated that 'This is prima facie retaliation by the ADAPTS administrative staff; my "academic dishonesty" was contrived in revenge for my email complaints decrying the unacceptable testing conditions of the zoo test center.'

Mr. Atchison received Mr. Newsome's response, dated March 5, 2010, stating "that the Chair of the Committee…has determined that, since the initial determination in your case was made some years ago by President Wayne Clough and because President Peterson has not had an opportunity to review the matter, the request to appear before a committee of the Board of Regents is denied so that the matter may first be presented to appropriate officials at Georgia Tech."

Apparently because Mr. Atchison did not receive any further communication from the Institute regarding his appeal, he wrote, on December 11, 2010, to President Peterson saying that the "Board of Regents, Committee on Organization and Law, has accepted my petition for reconsideration, and the decision to grant clemency has fallen to you." Mr. Atchison entreated him to do so.

18

Mr. Atchison wrote Vice Chancellor Newsome, on January 7, 2011, saying that he had tried to deliver his petition to President Peterson on December 21, but that Gary Wolovick, Managing Attorney for Georgia Tech, intervened and prevented him from doing so.  He asked Mr. Newsome to "please permit the Committee on Organization and Law to consider the bound copies of the clemency petitions I gave to Keesha Coleman on December 20th."

On January 7, 2011, Gary Wolovick wrote to Mr. Atchison saying that the Office of Legal Affairs of the Board of Regents had sent him a copy of his petition, and that the Institute was "not going to take any action on this request."  Further, he said "Please do not contact the President's Office regarding this matter."

On March 1, 2011, Mr. Gene Chapman, attorney for Mr. Atchison, wrote to Mr. Newsome and Larry Walker, Chair of the Board of Regents Committee on Organization and Law.  He said that "Mr. Atchison is applying for review of Georgia Tech's erroneous decision to expel him.  Mr. Atchison has continued to seek redress for this wrong and has exhausted his administrative remedies, so it is appropriate for the Committee on

Organization and Law of the Board of Regents to consider his application."

Mr. Chapman continued by writing "I will set forth a brief summary of the

facts and ask the Committee to resolve this matter fairly."  During his

review, Mr. Chapman wrote that '(o)n January 25 (sic), 2010, Mr. Atchison

wrote to Mr. Burns Newsome to request a rehearing and included new

evidence for review.  On March 5, 2010, Mr. Newsome remanded the matter

to Georgia Tech for its consideration.  When Mr. Atchison did not receive a

response to the remand, he wrote to President Peterson to seek his

assistance.  President Peterson apparently referred the matter to Dean John

Stein who asked Georgia Tech attorney Gary Wolovick to respond.  On

January 13, 2011, almost a year after the Board's remand, Mr. Wolovick

stated in his email to Mr. Atchison that Georgia Tech has "decided not to

consider your request for review as it is not required to do so."  (emphasis

added)'.

On March 2, 2011, Mr. Wolovick sent an email to Mr. Newsome

saying that "What is important for the BOR to understand is that Lewis's

expulsion was based on a cumulative history of disciplinary action, not

based on this one case.  On the same day Mr. Newsome responded to Mr.

Chapman saying that "the committee's March agenda has been complete for some time and it does not appear as the though the committee will be able to expand its agenda. We will, however, be pleased to brief Chairman Walker and will proceed as he and the committee believe appropriate."

On March 3, 2011, Mr. Chapman sent to Mr. Walker a "binder with Mr. Atchison's letters, Mr. Michael Bowers' letter, and supporting documentation to supplement his application."

On May 4, 2011, Mr. Chapman wrote to Mr. Newsome and Mr. Walker saying that he represented Mr. Atchison and "requested that the Committee on Organization and Law place this matter on its next agenda. I am writing to provide supplemental information for the Committee to consider. We are asking the Committee to either allow Mr. Atchison to finish the five courses he needs to graduate via Georgia Tech's distance learning program, or in the alternative, refer the matter for a new hearing of the evidence before a hearing officer or arbitrator."  He stated that "Mr. Atchison submitted his appeal and his application to the President of Georgia Tech.  As recently as January 13, 2011, Georgia Tech refused to consider any new evidence that Mr. Atchison presented."

On June 6, 2011, Mr. Chapman sent an email to Mr. Newsome saying "I informed Mr. Atchison about the decision to place the Application for Review and Petition for Clemency on the August agenda." Then Mr. Newsome wrote a letter, dated July 28, 2011, to Mr. Atchison stating that pursuant to the Bylaws of the Board of Regents, "your appeal will be presented to the Board at its Sept. 13-14, 2011, meeting; however, pending availability of time, the Board may elect to postpone action until a future meeting."

On August 1, 2011, Mr. Newsome informed Mr. Atchison what materials he should provide in his application "for review of final decision made by presidents of institutions in the University System."

Then from an exchange of emails between Kyle Torok of the Office of Legal Affairs and Mr. Atchison it appears that Mr. Atchison's appeal was to be presented to the Board of Regents Organization and Law Committee on August 9, but that he was not informed of this until that day. Mr. Atchison requested and was granted an extension for his submissions to September 2, 2011.

Mr. Wolovick, on behalf of Georgia Tech, responded to Mr.

Newsome, Vice Chancellor for Legal Affairs, Board of Regents, on August 26, 2011, regarding Mr. Atchison's request for reconsideration and clemency to the Board of Regents. Significantly he wrote that "as required by BOR policy on appeals, an appeal of the president's decision is permitted only if the school president considers the matter and issues his decision. There is no new decision of the GIT President to appeal to BOR…Since President Peterson has not agreed to entertain a request for clemency, GIT respectfully suggests that neither should the BOR."

On September 1, 2011, Mr. Newsome wrote to Martin G. Hilliard, who represented Mr. Atchison, that his "request for an extension to prepare Lewis Atchison's application for review to the Board of Regents is granted", but that "this extension will necessitate moving Mr. Atchison's application to the October meeting of the Board of Regents."

On September 30, 2011, Mr. Hilliard, on behalf of Mr. Atchison, wrote a request for clemency and readmission to Georgia Tech by the Board of Regents, and on October 10, 2011, via emails, Mr. Hilliard requested of Mr. Newsome a continuance for Mr. Atchison to November 8, 2011, because Mr. Atchison did not have the copy of his "record" that would be

used by the Board of Regents, and that this record should be corrected so that it was accurate, and because Mr. Hilliard wanted to "submit a couple of more points" but was in Savannah for a jury trial that would begin on October 11, 2011.

Nonetheless, Mr. Newsome wrote, on October 13, 2011, that the Board of Regents, at its meeting on October 11, 2011, had "decided to uphold the decision of the university in this matter."

## CONCLUSIONS

The original hearing procedures were fatally flawed, and the Fulton County Court Order was ignored leading to a cumulative disciplinary history which was misused to proceed with Mr. Atchison's expulsion.  The ADAPTS administration's obvious unlawful retaliation against Mr. Atchison because of his rightful complaints about the testing center, was never addressed by Georgia Tech or the Board of Regents.

Georgia Tech's administration should have enforced a quiet testing environment, and should have taken action to protect Mr. Atchison from the retaliation he suffered for complaining that the accommodations for his

learning disability were not being provided.  Instead the Institute ignored

their obligations to provide a quiet testing environment for Mr. Atchison and

unlawfully retaliated against him for complaining about the Institute's staff's

hostile denial of his accommodation by allowing a case brought in retaliation

to proceed.  I find it obvious that a causal links exist between Mr. Atchison's

right to a quiet testing environment as a justified accommodation for his

learning disability, his complaints about being denied this accommodation

on many occasions, and the retaliation that he encountered that lead to his

expulsion and denial of reinstatement/readmission.

The evaluation process for reinstatement/readmission to a university

normally differs from first admission because the applicant's reasons for

leaving the institution before he attained his degree, what he has done since

he left the institution, and his academic record, and non-academic record if

relevant, while he was a student at the institution will be considered as part

of his record.  Of course, expulsion is difficult to overcome for any person

seeking reinstatement/readmission to an institution of higher education, but

in Mr. Atchison's case he was a student in good academic standing before

the ADAPTS staff retaliated against him.  I agree with Mr. Atchison's

statement as written in his letter of appeal, dated January 26, 2010, to Vice Chancellor Newsome, that 'This is prima facie retaliation by the ADAPTS administrative staff; my "academic dishonesty" was contrived in revenge for my email complaints decrying the unacceptable testing conditions of the zoo test center.'

From my perspective the Institute continued to harass Mr. Atchison when it introduced time-delaying and unwarranted confusion between the President and the Board of Regents about the final processes for handling Mr. Atchison's appeal of his expulsion and request for clemency and reinstatement/readmission in the Georgia Institute of Technology.

On March 5, 2010, Mr. Atchison was told by the Board of Regents that his requests would be handled by the Institute. Nonetheless, Mr. Atchison was stopped from delivering his petition to President Peterson and warned by Mr. Wolovick not to contact the President's Office on this matter.

This appears to me to be further retaliation against Mr. Atchison because he asked the Board of Regents to review the Institute's handling of his case. It took almost a year for Mr. Wolovick to write an email, on January 7, 2011, to Mr. Atchison to inform him that the Institute would not

take any action on his request for clemency and  reinstatement/readmission.

I cannot imagine any scheduling issues within the Board that would justify such a long delay in responding to Mr. Atchison.   It was not until more than six months had passed from the time of Mr. Wolovick's email that Mr. Newsome wrote a letter, dated July 28, 2011, to Mr. Atchison stating that pursuant to the Bylaws of the Board of Regents, "your appeal will be presented to the Board at its Sept. 13-14, 2011, meeting; however, pending availability of time, the Board may elect to postpone action until a future meeting."  Following more exchanges between Mr. Atchison's attorney and the Board of Regents concerning scheduling the presentation of the appeal to the to the Board of Regents, Mr. Newsome wrote to Martin G. Hilliard, on September 1, 2011, who represented Mr. Atchison, that his "request for an extension to prepare Lewis Atchison's application for review to the Board of Regents is granted", but that "this extension will necessitate moving Mr. Atchison's application to the October meeting of the Board of Regents."  Following more communications, Mr. Hilliard, on behalf of Mr. Atchison, wrote, on September 30, 2011, another request for clemency and readmission to Georgia Tech by the Board of Regents.  Mr. Newsome wrote,

on October 13, 2011, that the Board of Regents, at its meeting on October 11, 2011, had "decided to uphold the decision of the university in this matter."

That the Board of Regents did not rule sooner on Mr. Atchison's appeal of a decision reached at the University level is unconscionable in my opinion. During the Board's long delay Mr. Atchison's life was put in limbo as were his means to making a living; these could have been productive years in Mr. Atchison's life.

---

I will not use exhibits.

I have provided a very brief overview of my *curriculum vitae* and the document itself.

I have not testified as an expert witness at trial or by deposition during the previous four years. In fact I have never testified as an expert witness in any case.

My compensation is $300/hour.

This 16th day of February, 2015.

Respectfully Submitted,

*Margo Post Marshak*

Margo Post Marshak
31 Sleepy Hollow Drive
Newtown Square, P.A. 19073
(610) 356-2244
mmarshak@caltech.edu
Expert Witness for Plaintiff

*Mary E. Vizzard*

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARY E. VIZZARD, Notary Public
Newtown Twp., Delaware County
My Commission Expires September 19, 2017

Sworn to and subscribed before me
this _16_ day of _feb_ 20 _15_